IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JILL LOUISE DAVENPORT, ) | CIVIL ACTION 4:12-cv-371-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| CAROLYN W. COLVIN,[1] ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

    This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

## PROCEDURAL HISTORY

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Jill Louise Davenport ("Plaintiff" or "Claimant") filed applications for DIB and SSI on July 15, 2009, alleging a disability date of March 12, 2002. At the time of the hearing, Plaintiff amended her alleged onset date to September 28, 2009. Her applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held on August 8, 2011, before an Administrative Law Judge ("ALJ"). Plaintiff and a vocational expert (VE) testified. The ALJ issued an unfavorable decision on August 26, 2011, finding Plaintiff was not disabled within the meaning of the Act. (Tr.12-18). In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The claimant has not engaged in substantial gainful activity since September 28, 2009, the amended onset date (20 CFR 404.1571 *et seq.* and 416.971, *et seq.*).

3. The claimant has the following severe impairments: migraine headaches and obesity (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can never climb ladders/ropes/scaffolds; must avoid concentrated exposure to moving machinery and unprotected heights; is limited to simple, repetitive, and routine tasks in a low stress environment involving only occasional changes in the work setting without fast paced production line work; and can have only occasional interaction with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on September 16, 1971 was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 28, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-18).

The Appeals Council denied Plaintiff's request for review. (Tr. 3-5). After the Appeals Council denied her request for review, Plaintiff filed her complaint in this action on February 8, 2012.

## **ANALYSIS**

Plaintiff alleges disability due to migraine headaches. Plaintiff was 39 years of age at the time of the hearing and graduated high school. (Tr. 30). Plaintiff has past relevant work as a deli clerk, fast food cook, and housekeeper. In her brief, Plaintiff argues the ALJ erred as follows:

1.  The Administrative Law Judge failed to attribute non-exertional functional limitations to Plaintiff's severe impairment of migraine headaches and failed to include those non-exertional limitations in his hypothetical question to the vocational expert.

       2.       The ALJ's credibility finding of not fully credible failed to take into account relevant medical evidence regarding the need for Botox treatment.

       3.       The ALJ failed to give credit to the statement of Plaintiff's treating physician.

(Plaintiff's brief).

The Commissioner contends that the ALJ did not commit these errors and that substantial evidence supports the determination that Plaintiff was not disabled.

Under the Act, 42 U.S.C. Section 405(g), this Court's scope of review of the Commissioner's final decision is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether he applied the correct law. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" is that evidence which "'a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's narrow scope of review does not encompass a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. See 20 C.F.R. § 404.1520. An ALJ must consider whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant has an impairment which equals a condition contained in the Act's listing of impairments (codified at 20 C.F.R. Part 404, Subpart P,

Appendix 1); (4) the claimant has an impairment which prevents past relevant work; and (5) the claimant's impairments prevent him from any substantial gainful employment. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

Under 42 U.S.C. Section 423(d)(5), the Plaintiff has the burden of proving disability, which is defined by Section 423(d)(1)(A) as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See also 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

## ARGUMENTS AND ANALYSIS

**Treating physician's opinion**

Plaintiff argues the ALJ erred in rejecting the opinion of Dr. Bruce Frankel that Plaintiff should see a neurologist for Botox injections to help with her migraine headaches. Plaintiff argues that Botox injections for migraines are only clinically indicated for migraines that occur for more than 14 days in a month. Therefore, Plaintiff asserts that the ALJ "should have credited that statement and found that Plaintiff would miss a substantial number of hours or days of work. The failure to provide great weight to Dr. Frankel's opinion and the opinion of his staff regarding the need for Botox requires remand." (Plaintiff's brief, p. 9).

Defendant argues that Dr. Frankel did not offer any opinions about Plaintiff's functional abilities, other than to release Plaintiff to work effective January 2010, four months after her September 2009 surgery. Defendant asserts that the referral to a neurologist for Botox injections does not include an opinion about her physical and mental restrictions and reflects that her headaches could be controlled with Botox injections.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1508 and § 404.1527(d)(2). The medical opinion of a treating physician is entitled to controlling weight, i.e. it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2), SSR 96-2p, and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2 31, 35 (4th Cir. 1992).

In determining what weight to give the opinions of medical sources, the ALJ must apply all of the factors in 20 C.F.R. § 404.1527(d)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of

6

the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. See SSR 96-2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Furthermore, 20 C.F.R. § 404.1527(d)(2) states: "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." SSR 96-2p requires that "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

In the decision, the ALJ acknowledged that Dr. Frankel recommended she follow-up with another doctor for possible Botox injections to help with her headaches. The ALJ found the following:

> In terms of the claimant's alleged migraine headaches, records from the Medical University of South Carolina ["MUSC"] demonstrate that the claimant has a history of chronic headaches. In September 2009, she underwent an endoscopic third ventriculostomy. Postoperatively, she was awake, alert, oriented, followed commands x4, and her extraocular movements were intact. After 2 days, she was deemed stable and discharged home.
>
> In October 2009, the claimant presented emergently to Roper Hospital with complaints of headaches. Evaluation, however, was unremarkable. She was afebrile, neurologically intact, and exam and CT scan revealed no indication of increased intracranial pressure from fluid accumulation. She was given Lortab and instructed to follow up with her neurologist. Subsequent MRI in November 2009 showed stable ventricles, right frontal gliosis and postsurgical changes. There was no acute intracranial abnormality seen.

7

> In May 2010, the claimant underwent another CT scan of the brain, which revealed no evidence of an acute intracranial abnormality. Dr. Nicholas Mayes noted unchanged asymmetry of the anterior horns of the lateral ventricles areas of chronic encephalomalacia, craniotomy defect and burr holes. More recently, in May 2011, the claimant presented to MUSC with complaints of continuing headaches. A repeat MRI was without evidence of hydrocephalus. Dr. Bruce Frankel encouraged the claimant to follow up with Dr. Athar for possible Botox injections to help alleviate her headaches. She was also given a referral to Dr. Burns for a possible lap-band. Dr. Frankel instructed the claimant to return for a follow up MRI in 1 year.

(Tr. 16).

Based on a review of Dr. Frankel's notes, there is substantial evidence to support the ALJ's decision. (Tr. 719). Dr. Frankel did not indicate any limitations due to Plaintiff's headaches. Dr. Frankel "encouraged [her] to follow up with Dr. Athar for possible Botox injections to help alleviate her headaches." (Id.).[2] Thus, there was no opinion by Dr. Frankel with regard to Plaintiff being disabled or as to any functional limitations she had due to migraine headaches. Additionally, the ALJ stated in his order that he was giving considerable weight to the physical residual functional capacity submitted by a State Disability physician, Dr. Jean Smolka, who concluded Plaintiff could perform work related activity at a "light exertional level over an 8 hour workday, 5 days per week, with some limitations." (Tr. 16). The ALJ's assessment shows that he evaluated the opinions and treatment notes of the medical experts and the objective medical evidence. His analysis was in compliance with the case law and regulations set forth above regarding physician opinion evidence and there is substantial evidence to support the ALJ's decision.

---

[2] Plaintiff's arguments center around this statement by Dr. Frankel. As discussed above, this statement does not indicate any particular restrictions.

**Credibility**

Plaintiff contends that the ALJ erred in his credibility assessment when he failed to take into account relevant medical evidence regarding her need for Botox treatment for her migraine headaches. Plaintiff argues that the ALJ's error is based upon a "fundamental misunderstanding of chronic migraine headaches and their disabling features." (Plaintiff's brief, p. 8). Plaintiff asserts she testified that she suffered from migraine headaches with eight to nine migraines a month, with some lasting one to two weeks. Because of the frequency, duration and intensity of her headaches, Plaintiff asserts Dr. Frankel recommended Botox injections because there was a lack of an organic explanation for the headaches. Plaintiff asserts that Botox injections are clinically indicated if migraines occur on more than fourteen days per month. Based on Dr. Frankel's recommendation for Botox injections, Plaintiff argues her testimony regarding the intensity, persistence and limiting effects of her migraines was supported by the record.

Defendant argues the ALJ reasonably discounted Plaintiff's assertions of disabling limitations finding that she worked for a number of years in the past despite her longstanding impairment; imaging of her brain after the September 2009 surgery was within normal limits; examinations findings after September 2009 were inconsistent with her assertions; although she had been primarily using over-the-counter medications, her headaches could be controlled with Botox injections; and, the record as a whole contained significant inconsistencies. However, Defendant asserts that the Plaintiff only challenges the finding that the referral for Botox could be interpreted to support a finding of disability. Defendant contends that the referral for Botox injections and

9

Plaintiff's own admission that her headaches could be controlled with Botox injections supports a finding that she was not disabled.[3]

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is deemed established does the factfinder proceed to the second step:   consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints.  See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ found at Craig's step one that Plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. The ALJ set out a summary of

---

[3] Plaintiff testified that she had received a Botox injection about seven years prior which alleviated her headaches completely for three months. (Tr. 36-37).  She asserts in her Reply Memorandum that she should not be penalized for not obtaining Botox injections based on Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)([SSD]and SSI benefits exist to give financial assistance to disabled persons because they are without the ability to sustain themselves. It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."). However, Plaintiff actually testified that she had paperwork to see someone at MUSC to attempt to get the Botox injections. She testified that she was on Medicaid and that it did not pay for Botox and that "I have to pay out of my pocket." (Tr. 37). Later when asked by the ALJ if she was getting the Botox injections she testified "No, sir. We haven't set up with Dr. Atara [sic]." (Tr. 38). Further, when asked if she thought the Botox injections would help her get back to work, Plaintiff testified that she was not sure due to other problems she was having. Plaintiff did not testify that lack of funds was the reason she had no further Botox injections. Thus, even if the ALJ had determined that she was disabled without Botox injections (which he did not), she fails to show the applicability of the holding in Gordon v. Schweiker.

Plaintiff's medical records and testimony at the hearing and concluded that her allegations that she is unable to perform all work activity not credible. The ALJ found as follows:

> At the hearing, the claimant testified that she has suffered from severe migraine headaches since she was 16 years old. At one time, she had a shunt placed in her head but it has been removed. She reported occasionally having double-vision. The claimant indicated that her headaches can sometimes last as long as 2 weeks. During these episodes, she avoids exposure to light and noise. She sometimes spends the entire day in bed. She reported some difficulty with her memory and concentration.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 15).

After discussing the medical evidence under the opinion of the treating physician above, the ALJ concluded that :

> Although the claimant's allegations of such significant limitations and pain were not fully consistent with the medical evidence of record, I accorded the claimant the benefit of the doubt and further reduced the residual functional capacity to include her limitations as described above, however, I cannot find the claimant's allegations that she is incapable of all work activity to be credible because of significant inconsistencies in the record as a whole.

(Tr. 16).

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The

determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The undersigned concludes the ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir.1990). It is not the responsibility of the Court to determine the weight of the evidence. Id. Here, the ALJ's decision is supported by substantial evidence.

**RFC/Hypothetical**

Plaintiff argues that the ALJ failed to attribute non-exertional functional limitations to her severe impairment of migraine headaches and failed to include them in his hypothetical to the VE. Specifically, Plaintiff argues that while the ALJ found that she had the severe impairment of migraine headaches, he failed to include all exertional and non-exertional limitations in the hypothetical to the VE.

In response, Defendant asserts that the ALJ reasonably discounted Plaintiff's assertions about extreme limitations in functioning in light of the medical evidence, inconsistencies in the record, and Plaintiff's own admission that her symptoms could be controlled with Botox injections. Defendant argues that the ALJ's RFC finding and hypothetical to the VE based on said RFC accounted for all of Plaintiff's credible limitations.

The Social Security Regulations define RFC as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). If the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work, considering the claimant's RFC, age, education, and past work experience.

In finding Plaintiff's residual functional capacity (RFC) that she can perform a restricted range of light work, the ALJ found Plaintiff's testimony not credible. As discussed above, there is substantial evidence to support the ALJ's decision in not finding Plaintiff completely credible. The ALJ's finding regarding Plaintiff's RFC is consistent with 10 C.F.R. §§ 404.1567(b) and 416.967(b). The decision reflects that the ALJ properly reviewed all of the evidence in determining Plaintiff's RFC. Hays v. Sullivan, 907 F.2d 1453,1456 (4th Cir. 1990) (It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence); see also Clarke v. Bowen, 843 F.2d 271, 272–273 (8th Cir.1988) ("The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"). The ALJ's finding that Plaintiff could perform light work with restrictions as noted is supported by substantial evidence in the case record. See English v. Shalala, 10 F.3d 1080, 1084 (4th Cir.1993) (finding that substantial evidence supported the ALJ's conclusion that the claimant was physically capable of limited light work despite his multiple impairments; case remanded on other grounds); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1993) (ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's

subjective complaints). Therefore, this Court finds that the ALJ's opinion sufficiently explained how he determined Plaintiff's RFC. See, e.g., Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir.2006) ("In light of SSR 96–8p, [the ALJ's] conclusion (that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight-hour day.) Therefore, the ALJ did not err in his assessment of Plaintiff's RFC and the decision should be affirmed.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

The ALJ found that Plaintiff could not perform her past relevant work. Therefore, the ALJ took testimony from a VE. The hypothetical posed by the ALJ to the VE was as follows:

> Assume a person of the claimant's age, education, work experience, able to do light work; no climbing ladders, ropes, scaffolds, avoiding concentrated exposure to the use of moving machinery and unprotected heights; work limited to simple, routine, repetitive tasks; in a low-stress environment, defined as only occasional changes in the work setting without, like, production line work, fast-paced production line work; only occasional interaction with the public.

(Tr. 50).

The VE responded with several jobs the Plaintiff could perform which the ALJ accepted. (Tr. 50). While Plaintiff may disagree with the findings of the ALJ with regard to her credibility and her allegations with respect to the intensity and duration of her migraine headaches which would cause her to miss time from work, these findings are supported by substantial evidence in the record as that term is defined in the applicable case law. Hence, the RFC and the hypothetical based on the RFC given by the ALJ to the VE was proper and supported by substantial evidence. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)(ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record).

## **CONCLUSION**

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to

show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

September 9, 2013
Florence, South Carolina